No. 2278

Second Circuit

---

HERMAN J. DUNCAN v. MRS. JOHN C. BLACKMAN

---

(February 8, 1926, Opinion and Decree)

---

(*Syllabus by the Court.*)

1. **Louisiana Digest—Actions—Par. 15.**
A personal action lies against him who has bound himself towards another personally and independently of the property which he possesses.
Code of Practice, Article 26.

2. **Louisiana Digest—Quasi-Contracts—Par. 17, 19, 20; Offences and Quasi-Offences —Par. 11.**
A personal action on a quantum meruit must be based on one of four causes: contract or quasi-contract, offence or quasi-offence.
Code of Practice, Article 28.

3. **Louisiana Digest—Quasi-Contracts—Par. 21; Obligations—Par. 170.**
In order for plaintiff to recover in this, a personal action on a quantum meruit, he must prove an employment and the rendition of services by him in accordance with the terms of the employment.

Appeal from the Thirteenth Judicial District Court of Louisiana, Parish of Rapides, Hon. Leven L. Hooe, Judge.

Judgment affirmed.

George J. Ginsberg, of Alexandria, attorney for plaintiff, appellant.

Overton and Hunter, of Alexandria, attorneys for defendant, appellee.

STATEMENT OF THE CASE

REYNOLDS, J.    Plaintiff seeks to recover from defendant $1636.00 on a quantum meruit for services rendered by him to her in the preparation of plans and specifications for a proposed apartment house that was never built.

Defendant denied liability on the ground that she had contracted with defendant to prepare plans and specifications for a building to cost not exceeding $25,000.00; that she would not erect a building costing more than that amount, and that she should not be liable to plaintiff for the value of his services unless the building for which he prepared plans and specifications could be constructed for not more than $25,000.00 and was erected.

On these issues the case was tried and there was judgment in favor of defendant rejecting plaintiff's demand and he has appealed.

OPINION

In February, 1924, defendant requested plaintiff to advise her relative to an apartment building she contemplated erecting adjoining the "Piggly Wiggly" building owned by her in the town of Alexandria, Louisiana, for which plaintiff had furnished plans and specifications, and asked him about his fees for his services. He informed her that he would be glad to do any preliminary work without compensation and that in the event she decided not to proceed with the building and order plans and specifications prepared for it there would not be any charge for his preliminary services.

Plaintiff himself testified, pages 2, 7 and 23:

"Q.    Proceed?
"A.    And about some time in February,

Mrs. Blackman requested me to advise her relative to building an apartment house on the property at the rear of the Piggly Wiggly building. At this conference Mrs. Blackman asked what would be my fee for doing this work, and I informed Mrs. Blackman—

\* \* \*

. \* \* \* I informed Mrs. Blackman that I would be glad to do any preliminary work for her that I could, and that in the event that she did not go ahead with the work and order the plans and specifications prepared, that I would make no charge for the preliminary work.

\* \* \*

"Q. Was there an understanding between you and Mrs. Blackman from the beginning that in the event that nothing but preliminary drawings were undertaken, there would be no charge?
"A. Yes, sir.

\* \* . \*

"Q. Now, Mr. Duncan, you have stated, as I understand your testimony, that after you submitted the preliminary plans and sketches, and after you had advised Mrs. Blackman that your estimate was that the building would cost $25,000, and after she had received responses to your advertisements in reference to procuring tenants for her apartments, and after she had consulted with others, and after she had figured the revenue to be derived from the building predicated upon a cost of $25,000, that she then told you to go ahead and prepare the plans and specifications for the building. Now, I want to ask you if she did not say to you, in addition to that, to go ahead and prepare the plans and specifications provided the building would not cost in excess of $25,000?
"A. Mrs. Blackman told me on several occasions that she did not expect to spend over $25,000, but she never told me that she did not expect to pay for the plans and specifications; and if she had done so, they would never have been prepared."

After this positive understanding between plaintiff and defendant that plaintiff was to prepare plans and specifications. only if

the building could be constructed for not more than $25,000—

"Q. It was prepared, then, after Mrs. Blackman had authorized you to go ahead with the complete plans and specifications upon the theory that the building would not be in excess of $25,000?
"A. Yes, sir."

Accordingly plaintiff did prepare plans and specifications for a building which he estimated should not cost exceeding $17,000 and which he later estimated should cost not exceeding $25,000.

After due advertisements for bids for the doing of the work the following were received:

S. J. Rockhold............................................$42,900.00
E. J. Michiels .................................................. 58,876.00
A. A. Gremillion............................................ 52,049.85
S. W. Tudor...................................................... 44,646.45
J. S. Casey......................................................... 51,350.00

The lowest of these bids being more than seventy per cent greater than the maximum amount that defendant was willing to invest in the building and that plaintiff had estimated it should cost, at plaintiff's advice defendant rejected all of the bids as too high and he thereupon suggested to her that he be permitted to revise the plans and specifications so as to bring the cost of the building within the figure she was willing to invest.

"Q. Did you reject them, or did Mrs. Blackman reject them, or did you both reject tnem? (The bids.)
"A. I advised Mrs. Blackman to reject them but she did the rejecting.

Page 6:

"Q. At this point, Mr. Duncan, did you also make an estimate of the revised plans before asking for bids?
"A. Yes, sir.
"Q. Have you any recollection of what that estimate was?
"A. To the best of my recollection, we had estimated a reduction of about $6,000.
"Q. On account of the revisions?

"A. Yes, sir, on account of the revisions."

Bids were invited on the revised plans and specifications. After due advertisements the following were received.

S. W. Tudor------------------------$39,565.00
A. A. Gremillion----------------- 46,049.00
Gehr Construction Company------- 43,000.00
S. J. Rockhold------------------- 38,500.00

All of these bids also were rejected as excessive and the proposed building was never constructed.

Plaintiff now asks judgment against defendant on a quantum meruit in the sum of $1636.00.

From the foregoing statement of facts it is apparent that defendant was not to become liable to plaintiff for the value of his services unless a building could be erected in accordance with the plans and specifications prepared by him for not exceeding $25,000; and that it was thoroughly understood between them that defendant was not willing to invest in the building exceeding $25,000.

It therefore follows that there was no contract between plaintiff and defendant under which she could have become indebted to him.

In order for plaintiff to recover judgment against defendant on a quantum meruit it must appear that there was a contract express or implied between them or that his services inured to her benefit; and in the absence of any obligation under a contract or quasi-contract, offence or quasi-offence, whereby defendant became indebted to plaintiff he is not entitled to judgment for the value of the work done or services rendered by him in connection with the plans and specifications.

For these reasons, it is ordered, adjudged and decreed that the judgment of the lower court be affirmed.