212 So.2d 749 (1968)
Mary Frances WALTERS
v.
Harold and Juanita EDWARDS et al.
No. 7428.
Court of Appeal of Louisiana, First Circuit.
July 1, 1968.
*750 Dennis R. Whalen, Baton Rouge, for defendants and third-party plaintiffs-appellants, Harold and Juanita Edwards.
F. W. Middleton, Jr., of Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for Aetna Casualty & Surety Co., third-party defendant, third-party plaintiff-appellant.
Donald T. W. Phelps, Baton Rouge, for Fred E. LeLaurin, Jr., third-party defendant-appellee.
James A. McGraw, of Kelton & Taylor, Baton Rouge, for Streety-Mackenroth, Inc., third-party defendant-appellee.
Before LANDRY, REID and BAILES, JJ.
REID, Judge.
This action was brought by Miss Mary Frances Walters against Harold and Juanita Edwards for damages resulting from a collision between a 1961 Chevrolet owned and at the time driven by Miss Walters, and a 1957 Chrysler Imperial owned by Harold Edwards and at the time driven by Juanita Edwards, then the wife of said Harold Edwards. The accident occurred on January 2, 1962, at the intersection of Navajo and Tecumseh Streets in the City of Baton Rouge, Louisiana. Miss Walters was traveling West on Navajo Street and Mrs. Edwards was traveling North on Tecumseh Street. There was no traffic light at the intersection, but there were stop signs on Tecumseh Street. Mrs. Edwards testified that she stopped at the intersection and looked in both directions but failed to see the Walters car approaching and pulled into the intersection in front of the Walters car and the Walters car struck the right front of the Edwards vehicle. Aetna Casualty and Surety Company was made a party defendant by amended petition as the alleged insurer of the Edwards vehicle but it was subsequently dismissed from the main demand in the suit. Pacific Insurance Company of New York intervened as the insurer of the Walters vehicle for the purpose of recovering the sum paid by it for repairs to Miss Walters' car. The defendants filed a third party demand against Fred E. LeLaurin, Jr., as insurance agent, Streety-Mackenroth, Inc., the general insurance agency through whom LeLaurin dealt, and The Aetna Casualty & Surety Company. Aetna Casualty & Surety Company in turn filed a third party action against Fred E. LeLaurin, Jr. and Streety-Mackenroth, Inc., and Streety-Mackenroth, Inc. filed an additional third party demand against Fred E. LeLaurin, Jr. and The Aetna Casualty & Surety Company. The Trial Judge felt that the liability of the principal defendants, Harold L. and Juanita Edwards, was clearly shown and rendered judgment in favor of plaintiff, Mary Frances Walters, and against *751 Harold L. and Juanita Edwards, in the sum of $1,866.75, and further rendered judgment in favor of Pacific Insurance Company in the sum of $1,156.92, recognizing its rights of subrogation against plaintiff for the amount paid plaintiff. The third party action of Harold L. and Juanita Edwards against Streety-Mackenroth, Inc., Fred E. LeLaurin, Jr., and The Aetna Casualty & Surety Company was dismissed and the third party action of Streety-Mackenroth, Inc. against Aetna and Fred E. LeLaurin and the third party action of Aetna against LeLaurin and Streety-Mackenroth were also dismissed. No appeal was taken by the defendants from the judgment in favor of plaintiff and plaintiff's automobile collision carrier which intervened to assert its property damage subrogation claim. Both third party plaintiffs and defendants appealed.
The only issues before this Court are with regard to the third party demands. Mr. and Mrs. Edwards had filed a third party demand against Aetna, Streety-Mackenroth, Inc. and Fred E. LeLaurin, Jr. Streety-Mackenroth answered the third party action by the defendants and in turn filed a third party action against LeLaurin and Aetna, and asked for judgment against them for whatever judgment may be rendered against it in the Edwards' third party suit. Aetna denied the Edwards' third party suit and in the alternative prayed for judgment against LeLaurin and Streety-Mackenroth, Inc., for allegedly acting for and binding Aetna, for any amount Aetna may be held liable for in the Edwards' third party suit. LeLaurin answered Aetna's third party suit with a general denial.
The facts showed that Mr. Fred E. LeLaurin, Jr. worked for Streety-Mackenroth Insurance Agency of New Orleans, Louisiana. Mrs. Edwards had a sister-in-law who worked for Aetna in Baton Rouge. The testimony shows that the sister-in-law requested Mr. Fred E. LeLaurin, Jr. to prepare a policy of insurance for Mr. and Mrs. Edwards. Policy No. 39FA75586 with Aetna Casualty & Surety Company, through Streety-Mackenroth, Inc., was issued to Harold L. Edwards on September 9, 1959 for a period of one year. The policy was renewed for the period September 9, 1960 to September 9, 1961, for a premium of $173.74. As pointed out by the Trial Judge, the circumstances and manner in which this one year's extension of this policy from September 9, 1960 to September 9, 1961, is the very crux of this lawsuit.
The testimony shows that shortly after the collision between the two cars on January 2, 1962, Mrs. Edwards telephoned her sister at the Aetna Casualty & Surety Company office, told her of the accident, and the sister informed Mrs. Edwards that her policy had expired on September 9, 1961.
Defendants argued that at the time the original policy was issued they had an oral agreement with the agent, Fred E. LeLaurin, to renew the policy without notice from the defendants. Mr. LeLaurin emphatically denied this. Defendants introduced in evidence a letter dated August 9, 1960 from Streety-Mackenroth, Inc. to Mr. Edwards enclosing a renewal certificate for another year. Attached to the renewal certificate was a small sticker containing the following:
"This renewal policy is sent you in the belief that you do not want your protection to lapse. Since we must pay the company from the effective date, we require that you notify us at once if the protection is not desired, or if changes are necessary."
While the renewal notice was on an Aetna printed form, it undoubtedly was prepared by Streety-Mackenroth, Inc. and on August 25, 1960, its agent, Fred E. LeLaurin, Jr. forwarded the same to Mr. Edwards' sister-in-law at the Baton Rouge Aetna office with the following notation: "I am enclosing herewith the renewal on Harold Edwards' automobile insurance policy. *752 The premium which is due on September 9, 1960 is $173.74. I will appreciate very much your delivering this to Harold and asking him to send me a check at his earliest convenience." Mrs. Edwards' check dated October 4, 1960 was forwarded in payment of the premium. The following year no renewal certificate was requested by Mr. and Mrs. Edwards and none issued by Aetna, and consequently the insurance expired on September 9, 1961, four months prior to the accident sued on herein.
In his deposition on January 28, 1964, Mr. Edwards testified that he thought he had inquired about his insurance policy and requested a renewal certificate in 1960, but on March 11, 1964, he signed an affidavit which was introduced in evidence, saying that upon checking into the matter "both with the Federal Credit Union and with my sister-in-law, Shirley, I do not believe my original statement was correct, and I do not believe there was any contact with Streety-Mackenroth, Inc., or Aetna, or with my sister-in-law, Shirley, asking for a renewal" at the end of the first year. This affidavit is in conflict with Mr. Edwards' testimony and is self serving.
The record shows that the original policy was filed in evidence by counsel for Mr. and Mrs. Edwards. There is nothing in the policy itself that indicates that it is more than a normal one-year policy. Both Mr. and Mrs. Edwards testified that the only contact they had with anyone regarding the insurance was with Mrs. Edwards' sister, Shirley Miller. Neither Mr. Edwards nor Mrs. Edwards claimed that Shirley Miller made any representations to them with regard to automatic renewal, nor did they present Shirley Miller as a witness on their behalf. There is nothing in the record to indicate that at the time of the purchase of the original insurance policy there was any agreement or contract or commitment regarding subsequent automatic renewals. Neither is there anything in the record to indicate that there was any such agreement or understanding at the time of the issuance of the one renewal certificate effective September 9, 1960 to September 9, 1961. The only direct contact Mr. and Mrs. Edwards had at that time was with Shirley Miller. The record shows that at that time a request was made by a mortgagee to Mr. and Mrs. Edwards for a renewal of the policy and neither Mr. nor Mrs. Edwards claims that at that time there was any commitment or understanding with Shirley Miller that there would be any automatic renewal. Certainly the renewal certificate itself, nor the sticker attached thereto and referred to above, can be reasonably construed as indicating any commitment or contract to automatically renew insurance coverage every year without request or notice. In fact, by their own testimony, Mr. and Mrs. Edwards make it very clear that they really didn't think about the matter one way or the other.
The Trial Judge covered this phase of the case quite thoroughly in his reasons for judgment and we take the liberty of quoting therefrom:
"The orange colored sticker attached to Aetna Casualty Speed Claim Renewal Notice is nothing more nor less than a trade custom or good business practice to sell insurance and hold the customers they already have. It's an attempt by General Agents Streety-Mackenroth, to capitalize on the fact that the Company is renewing the insured's policy for one year. The same thing can be said of the letter of August 9 from Streety-Mackenroth, Inc. to Harold L. Edwards, which letter enclosing the renewal certificate, was forwarded by Mr. Fred E. LeLaurin to Mr. and Mrs. Edwards through Mrs. Edwards' sister, Miss Shirley Miller, by letter dated August 25. Nowhere in the record is there any evidence whatsoever that the Aetna Casualty and Surety Company, or their general agents, Streety-Mackenroth, *753 or the agent, Fred E. LeLaurin, Jr., agreed to continue defendants' policy two years, three years, five years, or any number of years.
"The evidence discloses that defendants' policy lapsed as of September 9, 1961. This accident happened January 2, 1962, four months after the policy lapsed. During the four months after the policy lapsed and before the accident, the Edwards had not received any notice of the premium due, they had not paid any premium, they had heard nothing about their policy; as a matter of fact, Mrs. Edwards testified she forgot about it and never thought about it during this four months' period. The Edwards permitted four months to pass after the policy lapsed on September 9 before they were involved in an accident, during which time they did nothing whatsoever pertaining to their policy. Both of them testified by their affidavits hereinabove referred to that neither of them, Mr. or Mrs. Edwards, had any contact with Streety-Mackenroth, Aetna, or their sister-in-law, Miss Shirley Miller, asking for a renewal of this policy. The fact that the policy was renewed for one year by Aetna through their general agent, Streety-Mackenroth and Fred E. LeLaurin, Jr. is no assurance that the policy would continue to be renewed and the Edwards were not justified in so believing. When four months had elapsed without any information about the renewal of the policy after September 9, 1961, without the payment of any premium, the Edwards should have been alarmed and concerned about their policy and should have taken steps to have it renewed or take out other insurance. They did nothing. In this they were remiss and negligent of their obligation. One renewal for one year only is not a sufficient length of time or sufficient repetition of an act, to justify the defendants, Mr. and Mrs. Edwards, to depend on a continued renewal. This is especially true when they did not pay their premium for four months. The burden was on them to see about the renewal of their insurance, not on Aetna, Streety-Mackenroth, nor LeLaurin."
As a general rule the jurisprudence is uniform that term insurance, which in effect is the status of an automobile liability policy, carries no obligation on the part of the agent to renew the policy, nor is there any obligation on the part of the insurance company to accept the renewal by an agent on any such insurance. See Topps v. North British & Mercantile Insurance Company, La.App., 2nd Cir.1933, 148 So. 470, where the Court said:
"In the present case no obligation devolved upon defendants' agent to renew, or issue anew, the insurance carried on plaintiff's property. He did so out of a desire to protect his and his principal's business, and to protect Hollins, his customer, in his mortgage rights against the property. Therefore, there being no obligation on defendant or its agent to issue a policy of insurance on the property at all, a fortiori was there no obligation on their part to maintain such insurance, if they consented to carry it, at the amount to which it had been increased in the first policy."
See also Price v. Mutual Benefit Health and Accident Association, 114 So.2d 124, where this Court held that the agent is not obligated to renew and the company is not obligated to accept a renewal on term insurance, and "thus, the policy, for all practical purposes, might be said to be one which is renewable from term to term upon payment of the premiums by the insured, and acceptance of the premiums by the insurer."
It is therefore clear that without any showing of detrimental reliance or some contractual obligation that Mr. Edwards had with either the agent or the insurance company, the Edwardses would not *754 be able to recover on their third party petition. In this regard it is clear from their testimony that Mr. and Mrs. Edwards have failed to show any detrimental reliance whatsoever. This is emphasized by the fact that their testimony in summation is to the effect that they really did not give the matter of renewal much thought one way or the other.
Regarding a contractual obligation, it is necessary for one who claims the benefit of a contract or an agreement to meet the burden of proving such an agreement or contract and its terms. See E. Levy & Company v. Shreveport Plumbing Company, La.App., 2nd Cir. 1959, 108 So.2d 810, and Hunter Company v. Commissioners of Bossier Levee District, La.App., 2nd Cir. 1959, 115 So.2d 226. It is clear from the record that this Mr. and Mrs. Edwards have failed to show. We are in accord with the Trial Judge's holding in regard to both the detrimental reliance and the showing of a contractual obligation.
Counsel for Mr. and Mrs. Edwards cites the case of Barelli v. Lytle, 4 La.Ann. 557, for the proposition that "the continuance of a relation or subject matter once established, will be presumed but not its pre-existence," and the case of Parish of Orleans v. Franz, Tess.Orleans App.Digest 70, to the effect that "where the existence of a certain state of things is once established, the law will presume its continuance." This Court has no argument with the holdings of the Courts in those cases, considering the facts in those cases. However, it is necessary that before that rule can be applied the existence of the relationship or subject matter must be established. The Trial Court in the present case found that this had not happened and an examination of the record before this court clearly proves that his holding was correct.
For the above and foregoing reasons, the judgment of the Trial Court is affirmed.
Affirmed.