PRICE, Judge.
William E. Wilson, plaintiff herein, brought this suit to recover the balance owed of $26,416.41 due under an alleged subcontract to furnish a portion of the carpentry labor in the construction of an apartment complex known as “The Nest” in Shreveport.
Defendants named in the suit are: Centennial Homes, Inc., the owner; Allen & O’Hara, Inc. its general contractor; and B. J. S. Builders, Inc., a subcontractor with whom plaintiff contends his contract was made.
In supplemental pleadings, plaintiff sought to have recognized and enforced a lien file by him affecting the property on which the work was performed. Defendant, Allen & O’Hara, in accord with its obligation under the general contract with Centennial, filed a bond to secure the lien claimant under the provisions of LSA-R.S. 9:4841 and the lien was canceled. A third party demand was filed by Allen & O’Hara against B. J. S. Builders, Inc., and two other non-residents who had executed a guaranty of completion on the work of B. J. S. This demand was not pursued in the trial court and is not before us on this appeal. Subsequent to the filing of certain preliminary pleadings counsel for B. J. S. was allowed to withdraw and B. J. S. was unrepresented and made no appearance at the trial on the merits. The record reflects that in a separate proceeding plaintiff herein obtained judgment by default against B. J. S. for the amount of his claim.
*894 After a trial of the merits of the subject action against Centennial and Allen & O’Hara, the district court rejected plaintiff’s demands.
From this judgment plaintiff has appealed.
The principal question at issue is whether the plaintiff sustained the burden in the trial court of proving the oral agreement he contends was made with B. J. S. Builders, Inc., which would entitle him to the protection afforded under the lien statute, LSA-R.S. 9:4801, et seq. for the amount he contends is owed under the disputed contract.
The pertinent facts giving rise to this litigation as shown by the record are substantially as follows:
In July 1973, Centennial Homes, Inc. began the construction of a second phase of an apartment complex containing approximately two hundred units. Allen & O’Hara Inc., the general contractor for the project subcontracted with B. J. S. Builders, Inc., a Florida firm, to perform a substantial portion of the contract which included the carpentry work giving rise to this litigation.
Plaintiff made inquiry of the general contractor in regard to furnishing labor in connection with this work and was referred to the B. J. S. superintendent, A1 Moore.
Plaintiff contends he made an oral agreement with Moore to furnish the labor necessary for the framing and flooring of the units then being constructed for the sum of $.35 per square foot. He contends B. J. S. agreed to pay his payroll and to make and disburse the necessary deductions therefrom. He further contends that he was to be paid the contract price of $.35 per square foot on the total of 178,404 square feet less the total labor costs, including FICA taxes, union pension fund contributions, and workmen’s compensation premiums. In his testimony plaintiff describes this payment to be in the nature of a “bonus” for his crew and him finishing the work quickly.
The record shows that prior to the completion of its subcontract work, B. J. S. became involved in financial difficulties and left the job. Allen & O’Hara assumed direct supervision of the remainder of the B. J. S. contract work and made directly the payment of wages to laborers or trades working under the B. J. S. subcontract. It is undisputed that plaintiff has been paid the full hourly wage of $7.35 as a carpenter foreman for the hours worked by him and that full wages have been paid to other members of the crew over which plaintiff supervised in the subject work.
Therefore for plaintiff to obtain the relief sought by him in this action, he must fall within the following pertinent provisions of LSA-R.S. 9:4801:
Every contractor, subcontractor, . who performs work . . . for the erection, construction, ... of immovable property, . . . with the consent or at the request of the owner thereof, . . . or of any person with whom the owner has contracted for such work has a privilege for the payment in principal and interest of such work or labor performed . . . upon the land and improvements on which the work or labor has been done . (emphasis supplied)
In his attempt to prove he was a “subcontractor” and thus entitled by virtue of the above statute to assert his claim for the balance alleged to be owed him by B. J. S. against the lien bond filed by the prime contractor in lieu of the privilege against the owner’s property, plaintiff sought to prove an oral contract with B. J. S. by his own testimony and other corroborating circumstances.
The trial judge did not find plaintiff had met his burden of proof in this regard and *895 rejected his demands. Although we consider the evidence to present a close question, we do not find the trial court has committed manifest error in its factual finding and affirm the judgment appealed from.
The standard of proof required to constitute legal proof of an oral contract is reviewed by the court in Hoffpauir v. La-Cal Mud Specialties, Inc., 165 So.2d 65 (La.App. 1st Cir. 1964) as follows:
Clearly the burden of proof, with legal certainty and by a preponderance of the evidence, rests upon a plaintiff who sues on an alleged oral contract; he must prove the existence of the contract and the term thereof. Haase v. Brumfield, La.App., 137 So.2d 680; Carroll Lumber & Supply Co. v. Bushong, La.App., 125 So.2d 210; Hunter Co. v. Commissioners of Bossier Levee Dist., La.App., 115 So. 2d 226; E. Levy & Company v. Shreveport Plumbing Company, La.App., 108 So.2d 810. And LSA-C.C. Art. 2277 provides that all contracts for the payment of money above $500 “ * * * must be proved at least by one credible witness, and other corroborating circumstances.” Therefore, in the instant case plaintiff has the double burden of proving the terms of the oral contract on which he relies and of making such proof by at least one credible witness and other corroborating circumstances.
Also see Bordlee v. Pat’s Construction Company, Inc., 316 So.2d 16 (La.App. 4th Cir. 1975).
Plaintiff sought to corroborate his own testimony that he had an oral agreement with the foreman of B. J. S. for payment on a unit price basis by the testimony of three carpenters who worked in the framing crew with him. They testified plaintiff solicited them to work on the subject construction job on a percentage and told them he had an agreement with B. J. S. to do the work for $.35 per square foot.
The testimony shows one of these witnesses expected to receive sixteen per cent and the other two eight per cent each of any amount plaintiff was paid under the alleged agreement with B. J. S.
Their testimony must be weighed in the light that it is hearsay and that the witnesses have a financial interest in the result.
Plaintiff also presented the testimony of another labor contractor, W. E. Hendrix, who testified the method of payment for framing work as claimed by plaintiff in this case was followed in the construction industry and that he had engaged plaintiff on this basis on prior jobs. However, he testified he also has engaged such work on a straight hourly wage basis.
While the foregoing evidence presented by plaintiff does have some corroborating value, we do not believe it constitutes proof by a preponderance of the evidence under the circumstances presented.
Enforcement of the contract in this proceeding is sought against parties who were not privy to its formation and who are therefore less able to offer proof to negate the existence of the agreement than is plaintiff to prove the affirmative. For this reason, the proof demanded of plaintiff to constitute a preponderance of the evidence should be clear and convincing.
All time records of employees submitted by B. J. S. to Allen & O’Hara for procurement of progress payments show plaintiff and his crew members as earning regular carpenter or foreman’s wages. According to the testimony of an accountant for Allen & O’Hara the method of accounting followed was not in accord with the proper procedure used when there is a necessity to *896 accrue the wages of certain employees separately to accord with a cost plus subcontract.
The preponderance of the evidence establishes that none of Allen & O’Hara’s personnel were aware plaintiff had an arrangement with B. J. S. other than as a carpenter foreman.
We find it unusual that at the time B. J. S. quit the job and Allen & O’Hara took over supervision of its contract work, that plaintiff did not inquire if his anticipated “bonus” promised by the defaulting subcontractor would be honored if he continued the work. This is all the more unusual in that plaintiff testified on one occasion prior to B. J. S. leaving the job, he and his men called a several hour shutdown of their work in an attempt to force B. J. S. to make payment under the agreement. No payment was made at that time by B. J. S. and plaintiff continued to work after allegedly being assured by the B. J. S. superintendent the money would be paid soon.
At the time Allen & O’Hara took over payment of B. J. S. employees directly, it would appear plaintiff would have made some demand for the balance which he contended was then owing under the oral agreement or would have discussed its future payment in the event he did not consider payment due until completion of the entire contract.
The foregoing circumstances create an inference there was no contractual relationship between plaintiff and B. J. S. other than an employment relationship as a carpenter foreman.
Plaintiff has failed to prove his claim to be a “subcontractor” under the lien statute and therefore his demands were properly rejected by the trial court.
In accord with the foregoing, the judgment appealed from is affirmed at appellant’s costs.